## Richmond.

## SOUTHERN RAILWAY COMPANY V. FINLEY & SEYMOUR.

### March 18, 1920.

1.  CONNECTING CARRIERS—*Liability of Connecting Carrier Under the Carmack Amendment.*—The Carmack amendment (U. S. Comp. St., secs. 8604a, 8604aa), providing that a shipper may sue the initial carrier either for its own default or for the default of any connecting carrier, contains a proviso, "that nothing in this section shall deprive any holder of such * * * bill of lading of any remedy or right of action which he has under the existing law." Thus, while the initial carrier may be sued, either for his own negligence or for that of any connecting carrier each of the connecting carriers may be sued for his own default or negligence.

2.  CONNECTING CARRIERS—*Liability of Connecting Carrier Under the Carmack Amendment.*—While the receiving carrier is thus responsible for the whole carriage, each connecting carrier may be sued for damages occurring on its line; and the liability of such participating carrier is fixed by the applicable valid terms of the original bill of lading.

3.  VARIANCE—*How and When Objection Made.*—The established rule in Virginia is that objection for a supposed variance between the allegations and the proof should be made in the trial court, and that the appropriate method of making such objection is to move to exclude the evidence.

4.  VARIANCE—*Amendments.*—Code of 1919, sec. 6250, provides that, if a variance between the evidence and the allegations appear, the court, if it considers that substantial justice will be promoted and that the opposite party cannot be prejudiced thereby, may allow the pleadings to be amended, or, instead of having the pleadings amended, may direct the jury to find the facts, and, if it consider the variance such as could not have prejudiced the opposite party, may give judgment according to the right of the case, and Code 1919, sec. 6104, provides that the court may at any time, in the furtherance of justice and upon such terms as it may deem just, permit pleadings to be amended, and that at every stage of the proceedings the court shall disregard any error or defect which does not affect the substantial rights of the parties.

5. VARIANCE—*How Taken Advantage of—Case at Bar.*—In the instant case, an action for damages against a carrier of live stock, the declaration alleged that the mules were delivered to the defendant company at Lexington, Ky., whereas the bill of lading showed that they were delivered to the initial carrier at that point. There was no surprise in the case, because the company itself introduced the bill of lading which it claimed produced the variance. The case was fairly tried and submitted to the jury; the attention of counsel, court, and jury being directed only to ascertaining the responsibility of the company as the delivering or terminal carrier.

*Held:* That whenever it is desired to raise a question of this character, which might be cured by amendment of the pleadings, it should be raised by motion to exclude the evidence.

6. CARRIERS OF LIVE STOCK—*Burden of Proof.*—In an action for damages to live stock, the burden is upon the carrier when it receives for transportation live stock in good condition, unaccompanied by the owner or his agent, and delivers it in damaged or bad condition, to show the cause of the damage.

7. DEMURRER TO THE EVIDENCE—*Action Against Carrier of Live Stock—Failure to Feed and Water.*—Where in an action against a carrier for damage to live stock, the jury might fairly have inferred from the evidence that the damage to the live stock was caused by the negligent failure of the defendant company to feed and water them properly during their journey, the trial court is bound so to conclude under the demurrer to the evidence rule.

Error to a judgment of the Corporation Court of city of Danville, in an action of trespass on the case. Judgment for plaintiffs. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Withers, Brown & Leigh,* for the plaintiff in error.

*P. J. Hundley* and *W. H. Rogers,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

The Southern Railway Company complains of a judgment in favor of Finley & Seymour for damages to mules shipped from Lexington, Ky., to Danville, Va., caused by the alleged negligent failure of the company to supply them with sufficient food and water during the transportation. The company filed its demurrer to the plaintiffs' evidence which the court overruled and gave judgment for the plaintiffs.

There are three assignments of error.

The first is stated thus: "The evidence shows that the said Cincinnati, New Orleans and Texas Pacific Railway Company was the initial carrier issuing the bill of lading covering the carload of mules in question in this case, and that therefore the said defendant is not a proper party, plaintiffs' right of action being against said initial carrier and it alone."

The company cites and relies on the case of *Chesapeake & Ohio Ry. Co. of Indiana* v. *National Bank of Commerce,* 122 Va. 471, 95 S. E. 454, and makes several quotations from the opinion, among them this language: "* * * and in such case the first contract remains in force by virtue of said Federal statute law and the shipper and all assignees of his claiming through him (all of whom could have enforced such original contract), have no right of action for damages against such subsequent carrier, but only against the initial carrier."

When the language of any opinion is to be construed, the first consideration should be directed to the precise question which was before the court when the language was used. This being ascertained, then the language should be construed as relating to that question. The issue in the case of *C. & O. Ry. Co.* v. *Bank, supra,* was whether the Union Pacific Railroad Company or the C. & O. Ry. Co. of Indiana was the initial carrier. The shipment in that case originated at Medicine Bow, Wyoming, and an order-notify

bill of lading was issued by the Union Pacific Railroad Company for the transportation of horses from that point to Windsor, N. C., by way of Chicago. It appeared, however, that there was a tariff regulation in existence which had been filed with the Interstate Commerce Commission and was effective, which prohibited the movement of live stock east of Chicago on such a bill of lading. So that it was necessary, because of that lawful regulation, to stop the shipment at Chicago. Thereupon the owner entered into a new contract with the C. & O. Ry. Co. of Indiana for the shipment of the horses from Chicago to Windsor, N. C., the original bill of lading being surrendered and a new one issued therefor by the C. & O. The chief controversy in that case, then, was whether the Union Pacific or the C. & O. was liable as the initial carrier, and all that is said in the opinion must be construed in view of the fact that the court determined that the C. & O. was such initial carrier, and therefore subject to the responsibilities imposed upon initial carriers by the Carmack amendment. Every expression used in that opinion which can be fairly construed as indicating that the connecting and delivering carriers of an interstate shipment cannot be sued for their own negligence was inadvertent and is disapproved. That question was not involved nor remotely considered in that case. It is perfectly well settled that a connecting or delivering carrier may be sued for its own defaults, and so far as we are advised there is no conflict of authority on this point.

In the case of *Georgia, F. & A. Ry. Co.* v. *Blish Milling Co.,* 241 U. S. 190, 60 L. Ed. 948, 36 Sup. Ct. 541, where it appeared that the shipment originated at Seymour, Ind., and that the Baltimore and Ohio Southwestern R. Co. was the initial carrier, that the shipment was transported over the Central of Georgia Railroad Co., a connecting carrier, and reached its destination over the line of the Georgia,

Florida and Alabama Ry. Co., the delivering carrier, the first question raised is identical with that here involved and is thus stated by the court: " That the plaintiff's exclusive remedy was against the initial carrier, the Baltimore and Ohio Southwestern Railroad Company, under the Carmack amendment of section twenty of the Hepburn bill." And the court disposes of that claim in this language: "The first contention is met by repeated decisions of this court. The connecting carrier is not relieved from liability by the Carmack amendment, but the bill of lading required to be issued by the initial carrier upon an interstate shipment governs the entire transportation and thus fixes the obligations of all participating carriers to the extent that the terms of the bill of lading are applicable and valid. 'The liability of any carrier in the route over which the articles were routed, for loss or damage, is that imposed by the act as measured by the original contract of shipment so far as it is valid under the act.' *Kansas Southern Ry. Co.* v. *Carl,* 227 U. S. 639, 648 [33 Sup. Ct. 391, 57 L. Ed. 683]. See *Adams Express Co.* v. *Croninger,* 226 U. S. 491, 507, 508 [33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257] ; *C., C., C. & St. L. Ry.* v. *Dettlebach,* 239 U. S. 588, 591 [36 Sup. Ct. 177, 60 L. Ed. 453] ; *Southern Railway* v. *Prescott,* 240 U. S. 632, 637 [36 Sup. Ct. 469, 60 L. Ed. 836].; *Northern Pacific Ry.* v. *Wall, ante,* [241 U. S. p. 87, 36 Sup. Ct. 493, 60 L. Ed. 905]."

Among the instructive cases decided by the Supreme Court of the United States in which the connecting or terminal carrier has been sued and held responsible under the bill of lading issued by the initial carrier are: *C., C., C. & St. L. R. Co.* v. *Dettlebach,* 239 U. S. 591, 36 Sup. Ct. 177, 60 L. Ed. 453, and *Missouri, K. & T. R. Co.* v. *Ward,* 244 U. S. 383, 37 Sup. Ct. 617, 61 L. Ed. 1213. In the latter case this is said: "The purpose of the Carmack amendment has been frequently considered by this court. It was to

create in the initial carrier unity of responsibility for the transportation to destination. *Atlantic Coast Line Railroad Co. v. Riverside Mills,* 219 U. S. 186 [31 Sup. Ct. 164, 55 L. Ed. 167, 31 L. R. A. (N. S.) 7] ; *Northern Pacific Ry. Co. v. Wall,* 241 U. S. 87, 92 [36 Sup. Ct. 493, 60 L. Ed. 905]. And provisions in the bill of lading inconsistent with that liability are void. *Norfolk & Western Ry. Co. v. Dixie Tobacco Co.,* 228 U. S. 593 [33 Sup. Ct. 609, 57 L. Ed. 980]. While the receiving carrier is thus responsible for the whole carriage, each connecting road may still be sued for damages occurring on its line; and the liability of each participating carrier is fixed by the applicable valid terms of the original bill of lading."

The same rule is followed in the recent cases of *John Lysaght Limited* v. *Lehigh Valley R. Co.* (D. C.), 254 Fed. 353; *Elliott* v. *Chicago, M. & St. P. Ry. Co.,* 35 S. Dak. 57, 150 N. W. 777; 10 C. J. 542.

[1, 2] The reasons for this conclusion have been so frequently stated as to need no repetition. The Carmack amendment itself, which provides that the shipper may sue the initial carrier either for its own default or for the default of any connecting carrier, contains this conclusive proviso: "That nothing in this section shall deprive any holder of such * * * bill of lading of any remedy or right of action which he has under the existing law." U. S. Comp. St. § 8604a. So that there can be no doubt that the initial carrier may be sued, either for its own negligence or for that of any connecting carrier, while each of the connecting carriers may be sued for its own default or negligence.

[3-5] The second assignment is based upon what is called a fatal variance between the allegations and the proof, it being alleged in the declaration that the mules were delivered to the defendant company at Lexington, Ky., whereas the bill of lading shows that they were de-

18

livered to the Cincinnati, New Orleans and Texas Pacific Ry. Co. at Lexington, Ky. The established rule in Virginia is that objection for a supposed variance between the allegations and the proof should be made in the trial court, and that the appropriate method of making such objection is to move to exclude the evidence. *Bertha Zinc. Co.* v. *Martin,* 93 Va. 801, 22 S. E. 869, 70 L. R. A. 999; *Newport News & Old Point Ry. & E. Co.* v. *McCormick,* 106 Va. 517, 56 S. E. 281; *Va. & Southwestern Ry. Co.* v. *Bailey,* 103 Va. 228, 49 S. E. 33; *Conrad* v. *Ellison-Harvey Co.,* 120 Va. 458, 91 S. E. 763, Ann. Cas. 1918 B, 1171; Standard Paint *Co.* v. *Vietor,* 120 Va. 595, 91 S. E. 752.

The question is controlled in this State by Code 1919, sec. 6250, so frequently construed, which provides that if a variance between the evidence and the allegations appear, the court, if it considers that substantial justice will be promoted and that the opposite party cannot be prejudiced thereby, may allow the pleadings to be amended, or, instead of having the pleadings amended, may direct the jury to find the facts, and if it consider the variance such as could not have prejudiced the opposite party, may give judgment according to the right of the case; and also by Code, 1919, sec. 6104, which provides that the court may at any time in the furtherance of justice and upon such terms as it may deem just, permit pleadings to be amended, and that at every stage of the proceedings the court shall disregard any error or defect which does not affect the substantial rights of the parties.

In this case there was no surprise whatever, because the company itself introduced the bill of lading which it now claims produces the variance. The case was fairly tried and submitted to the jury, the attention of counsel, court and jury being directed only to ascertaining the responsibility of the company as the delivering or terminal carrier. Whenever it is desired to raise a question of this charac-

ter, which may be cured by amendment of the pleadings, it should be raised by motion to exclude the evidence.

[6, 7] It is also claimed that the evidence is insufficient to support the judgment, and there is much discussion in the briefs as to whether the burden of proof as to the cause of the damage was upon the plaintiffs or the company. In our view, the weight of authority is that such burden is upon the company when it receives for transportation live stock, in good condition, unaccompanied by the owner or his agent, and delivers it in damaged or bad condition. *Galveston, H. & S. F. Ry. Co.* v. *Wallace,* 223 U. S. 481, 56 L. Ed. 523, 32 Sup. Ct. 205 (a pertinent case though not involving a shipment of live stock) ; *Church* v. *Chicago, B. & Q. R. Co.,* 81 Neb. 615, 116 N. W. 520; *Teeter* v. *Southern Express Co.,* 172 N. C. 616, 90 S. E. 761; *Illinois Cent. R. Co.* v. *Word,* 149 Ky. 229, 147 S. W. 949; Note 130 Am. St. Rep. 442. In the case in judgment this question is immaterial because the jury might fairly have inferred from the evidence that the damage to the mules was caused by the negligent failure of the defendant company to feed and water them properly during their long journey, and therefore the trial court was bound so to conclude under the demurrer to the evidence rule.

The judgment is plainly right.

*Affirmed.*