# TEXAS & PACIFIC RAILWAY COMPANY ET AL. *v.* LEATHERWOOD.

CERTIORARI TO THE COURT OF CIVIL APPEALS, SECOND SUPREME JUDICIAL DISTRICT, OF THE STATE OF TEXAS.

No. 249.　Submitted March 19, 1919.—Decided June 9, 1919.

Under the Carmack Amendment, connecting carriers, by requiring a shipper to sign new bills of lading for a shipment billed over their lines by the initial carrier, are not estopped to avail themselves of a provision of the original bill limiting the time for bringing actions

for damages, (p. 481), where the new bills were not acquiesced in by the shipper.  P. 483.

A stipulation in a bill of lading limiting to six months the time within which the shipper may sue for damages is not unreasonable and, before the Act of March 4, 1915, c. 176, 38 Stat. 1196, was valid under the Carmack Amendment.  P. 481.

Where matter clearly not required for a proper presentation of the questions submitted is incorporated into the transcript, the court may, under Rule 8, § 1, require that the whole of the clerk's fees for supervising the printing and the cost of printing the record be borne by the offending party.  P. 482.

Reversed.

THE case is stated in the opinion.

*Mr. George Thompson* and *Mr. J. H. Barwise, Jr.*, for petitioners.

*Mr. D. T. Bomar* for respondent.  *Mr. J. E. Garland* was on the brief.

MR. JUSTICE BRANDEIS announced the judgment of the court, and delivered the following opinion:

Leatherwood made, in 1913, a shipment of horses from Watrous, New Mexico, to Waco, Texas, over four connecting railroads.  The initial carrier gave him a through bill of lading which contained a provision barring any action for damages unless suit was brought within six months after the loss occurred.  When the horses reached the lines of the Texas & Pacific Railway and of the Missouri, Kansas & Texas Railway, each of these companies insisted, as a condition of carrying them further, that Leatherwood accept and sign a new bill of lading covering the shipment over its line, and he did so.

In 1915 he brought suit in a state court of Texas for injury to the horses while in transit on the lines of those two companies.  The bills of lading issued by them did

not contain the provision requiring suit to be brought
within six months; but the carriers set up as a defense
the provisions to that effect contained in the original bill
of lading, contending that under the Carmack Amend-
ment (Act of June 29, 1906, c. 3591, 34 Stat. 584, 595) all
connecting carriers were bound by its terms and that the
later ones issued by themselves were of no legal effect.[1]
The trial court denied this contention, and ruled as matter
of law that the carriers could not rely upon the provision
in the initial bill of lading. Judgment was entered for the
plaintiff and affirmed by the Court of Civil Appeals.
On June 2, 1917, that court denied a rehearing and de-
clined to certify to the Supreme Court of Texas the ques-
tions involved. The case comes here on writ of certiorari
(245 U. S. 649) under § 237 of the Judicial Code, as
amended by Act of September 6, 1916, c. 448, 39 Stat.
726.

The final decision below was rendered two days before
the decision of this court in *Missouri, Kansas & Texas
Ry. Co.* v. *Ward*, 244 U. S. 383. There one of the same
railroads had, as connecting carrier, issued a second bill
of lading to shippers of live stock who had received from
the initial carriers a through bill of lading on an interstate
shipment. But there the carriers relied for defense upon
a clause in the second bill of lading, which was not con-
tained in the first. We held that the second bill of lading
was void, since under the Carmack Amendment the several
carriers must be treated, not as independent contracting
parties, but as one system; and that the connecting lines
become in effect mere agents whose duty it is to forward
the goods under the terms of the contract made by their
principal, the initial carrier, and that they are prevented

---

[1] The rights of the parties are not affected by the Act of March 4,
1915, c. 176, 38 Stat. 1196, which prohibits a common carrier from
providing by contract or otherwise for a shorter period than two years
for the institution of suits.

by law from varying the terms of that contract. Leather-wood contends that the principle upon which the case was decided is not applicable here, because there the carriers sought to avail themselves of the second bill of lading, while here they seek to ignore it; and he insists that the carriers are, by their conduct, estopped from asserting its invalidity. As stated in *Georgia, Florida & Alabama Ry. Co.* v. *Blish Milling Co.*, 241 U. S. 190, 197, the parties to a bill of lading cannot waive its terms, nor can the carrier by its conduct give the shipper a right to ignore them. "A different view would antagonize the plain policy of the Act and open the door to the very abuses at which the Act was aimed." The bill of lading given by the initial carrier embodies the contract for transportation from point of origin to destination; and its terms in respect to conditions of liability are binding upon the shipper and upon all connecting carriers, just as a rate properly filed by the initial carrier is binding upon them. Each has in effect the force of a statute, of which all affected must take notice. That a carrier cannot be prevented by estoppel or otherwise from taking advantage of the lawful rate properly filed under the Interstate Commerce Act is well settled. A carrier has, for instance, been permitted to collect the legal rate, although it had quoted a lower rate and the shipper was ignorant of the fact that it was not the legal rate. *Texas & Pacific Ry. Co.* v. *Mugg*, 202 U. S. 242; *Illinois Central R. R. Co.* v. *Henderson Elevator Co.*, 226 U. S. 441; *Louisville & Nashville R. R. Co.* v. *Maxwell*, 237 U. S. 94; *Missouri, Kansas & Texas Ry. Co. of Texas* v. *Schnoutz*, 245 U. S. 641 (*Per curiam*).

The provision in the original bill of lading limiting to six months the time within which suit may be brought, not being unreasonable (*Missouri, Kansas & Texas Ry. Co.* v. *Harriman*, 227 U. S. 657, 672–673), was valid; and as the original bill of lading remained binding, the lower

courts erred in denying it effect. The judgment of the Court of Civil Appeals must therefore be reversed.

The record occupies 213 printed pages. Most of the matter which was included in it at the instance of petitioners was clearly not required for a proper presentation of the questions submitted here. Much useless expense has been incurred; and both court and counsel have been subjected to the burden of examining much that is irrelevant. Section 1 of Rule 8 of this court specifically provides that if portions of the record unnecessary to a proper presentation of the case are found to have been incorporated into the transcript by either party, the court may order that the whole or any part of the clerk's fees for supervising the printing and the cost of printing the record be paid by the offending party. Under the circumstances of this case it seems appropriate that the whole of this expense be borne by the petitioners; and it is so ordered.

*Judgment reversed.*

I am authorized to say that THE CHIEF JUSTICE, MR. JUSTICE HOLMES, and MR. JUSTICE DAY concur in the above opinion.

MR. JUSTICE McKENNA, MR. JUSTICE PITNEY, and MR. JUSTICE CLARKE dissent.

MR. JUSTICE McREYNOLDS concurring.

I concur in the conclusion that the judgment below must be reversed. Circumstances disclosed by the record and not discussed in the opinion, I think, require this result. But the broad declaration that the parties to a bill of lading cannot waive its terms nor can the carrier, by its conduct, give the shipper the right to ignore them goes beyond what is necessary to the decision and I am not prepared to assent to it as a proposition of law.

Suit was originally brought against the initial line (The Santa Fe) and connecting ones—Texas & Pacific Ry. Co. and Missouri, Kansas & Texas Railway—the claim being based upon the implied obligation arising out of delivery and acceptance of the horses by the former for through interstate carriage. In his pleadings the shipper expressly denied validity of all bills of lading—one issued by the Santa Fe and one by each of the petitioners. Of course, under the rule approved in *Missouri, Kansas & Texas Ry. Co.* v. *Ward,* 244 U. S. 383, he could have relied upon the first bill; but it does not follow that if, during transit, a connecting carrier declined to recognize the original agreement for through transportation and refused to proceed thereunder, he had no power to acquiesce, take possession of the animals and re-ship under another contract with such carrier not subject to avoidance by it. And if, in the present cause, instead of repudiating the bills of lading issued by connecting roads he had relied upon them the question presented would be a very different one, decision of which is not now demanded.

MR. JUSTICE VAN DEVANTER joins in this opinion.